## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| [1] VICKY HIGGINBOTHAM, on Behalf of Herself and all others Similarly Situated,<br><br>        Plaintiff,<br>   vs.<br><br>[1] SAMSUNG ELECTRONICS<br>    AMERICA, INC.,<br>[2] SAMSUNG ELECTRONICS CO., LTD.,<br>[3] THE HOME DEPOT, INC.<br>[4] LOWE'S COMPANIES, INC.<br>[5] BEST BUY CO., INC.<br>[6] SEARS HOLDING CORPORATION<br><br>        Defendants. | Case No.:  CIV-17-0102-HE<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Vicky Higginbotham ("Plaintiff" or "Higginbotham"), by her attorneys, on behalf of herself and the Class set forth below, alleges the following upon information and belief, except for those certain allegations that pertain to Plaintiff, which are based on Plaintiff's personal knowledge:

### NATURE OF THE ACTION

1.    This action relates to certain defective Samsung home washing machines which have an inherently dangerous defect—they "explode" or suffer catastrophic failure during a given machine's normal usage because of a design defect and/or manufacturing flaw.

2.    On or about August 20, 2016, Higginbotham purchased one of the aforementioned Samsung washing machines (Model No. WA56H9000AP/A2), now

subject to recall, from Best Buy Co. Inc., a "big box" store in Norman, Oklahoma. By March 2016, it was already known that Samsung's top loading washing machines were experiencing serious problems. *See*, http://www.dailymail.co.uk/news/article-3505540/Samsung-face-coronial-inquiry-washing-machines-recalled.html.

3.    Shortly after purchasing her Samsung washing machine, Higginbotham became aware of the problems being reported regarding Samsung washing machines like hers. She went immediately to the Best Buy store from which she purchased the washing machine, and confronted them about selling her a defective product. The manager of the Best Buy store provided her with a statement acknowledging the problem and advising her to deal with the problem through Samsung. *See* Exhibit 1. Higginbotham attempted to have her washing machine replaced through Samsung, but without success.

4.    On November 4, 2016, Samsung began a recall (Recall number: 17-028) of thirty-four (34) distinct models (the "Recalled Washing Machines"), all being models of Samsung top-load washing machines, including the model purchased by Higginbotham as is set forth above.  A listing of the model numbers for the Recalled Washing Machines is attached hereto as Exhibit 2.  The stated reason for the recall is that "[t]he [Samsung] washing machine top can unexpectedly detach from the washing machine chassis during use, posing a risk of injury from impact."   The recall bulletin further notes that "Samsung has received 733 reports of washing machines experiencing excessive vibration or the top detaching from the washing machine chassis.  There are nine related reports of injuries, including a broken jaw, injured shoulder, and other impact or fall-related injuries." *See*, https://www.cpsc.gov/recalls/2017/samsung-recalls-top-load-washing-machines.

5.      The remedies provided in Samsung's recall bulletin allow consumers the option of any one of the following: (i) an in-home repair that includes reinforcement of the washer's top and a free one-year extension of the manufacturer's warranty; (ii) a rebate to be applied towards the purchase of a new Samsung or other brand washing machine, along with free installation of the new unit and removal of old unit; or (iii) a full refund for consumers who purchased their washing machine less than 30 days before the recall announcement.  See, *id*.  In Higginbotham's circumstance, none of the available options were appropriate because (i) the retrofit that Samsung proposed to repair the defective machines would not actually fix the defect in the machine that Higginbotham purchased; (ii) a rebate would not have provided the complete cost it would take to replace the defective Samsung washing machine; and (iii) Higginbotham purchased her machine more than thirty days before the recall. In addition, despite repeated attempts Samsung would not respond to Higginbotham's requests for help, even though her machine was still covered by Samsung's original one year warranty.  As a result, the appearance was created that Samsung was intentionally withholding repair or replacement of Higginbotham's Samsung washing machine so that she would be forced to use the rebate to purchase another Samsung washing machine, thereby creating business for Samsung and saving Samsung the costs of the reinforcement measures.

6.      Higginbotham brings this action on behalf of herself and other purchasers of the Recalled Washing Machines sold to consumers in the United States, its possessions, or territories from March 2011 to November 2016.  Higginbotham seeks relief in the form of (i) an injunction enjoining Samsung, The Home Depot, Inc. ("The Home Depot"), Lowe's

Companies, Inc. ("Lowe's"), Best Buy Co., Inc. ("Best Buy"), and Sears Holding Corporation ("Sears") from any further sales of the Recalled Washing Machines, and to take such other remedial action as may be otherwise requested herein; and (ii) money damages to adequately and reasonably compensate owners of the Recalled Washing Machines who have, through no fault of their own, purchased defective and dangerous Samsung washing machines.

## PARTIES

7.     Plaintiff Vicky Higginbotham is a citizen of the State of Oklahoma, and is a resident of this District in Purcell, Oklahoma.

8.     Defendant Samsung Electronics Co., Ltd. is a South Korean corporation located in Seoul, South Korea.  On information, and belief, Samsung Electronics Co., Ltd. designs, manufactures, and distributes the Recalled Washing Machines as described herein for sale in this District.  At all times relevant hereto, Samsung Electronics Co., Ltd. was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.  Thus, Samsung Electronics Co., Ltd. purposely directed its conduct toward this District and at all times relevant engaged in a continuous course of business in this District by selling thousands of its washing machines and other consumer goods in this District every year.

9.     Defendant Samsung Electronics America, Inc. is a New York corporation that is a wholly-owned subsidiary of Samsung Electronics Co., Ltd., with its headquarters in Ridgefield Park, New Jersey.  Samsung Electronics America, Inc. is the warrantor of the products designed, manufactured, and distributed by Samsung Electronics Co., Ltd., and

acts as Samsung Electronics Co., Ltd.'s agent in the processing of warranty claims related to defects in the manufacturing or materials used by Samsung Electronics Co., Ltd. during the manufacturing process.  At all times relevant hereto, Samsung Electronics America, Inc. was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District. Samsung Electronics America, Inc. resides in and engages in a continuous course of business in this District, and based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.  Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. are referred to collectively herein as "Samsung."

10.     The Home Depot, Inc. is a Delaware corporation with its headquarters in Atlanta, Georgia.  At all times relevant hereto, The Home Depot was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.   The Home Depot resides in and engages in a continuous course of business in this District, and based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

11.     Lowe's Companies, Inc. ("Lowe's"), is a North Carolina corporation with its headquarters in Mooresville, North Carolina.  At all times relevant hereto, Lowe's was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.    Lowe's resides in and engages in a continuous course of business in this District, and based upon

information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

12.     Best Buy Co., Inc. ("Best Buy"), is a Minnesota corporation with its headquarters in Richfield, Minnesota.  At all times relevant hereto, Best Buy was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.   Best Buy resides in and engages in a continuous course of business in this District, and based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

13.     Sears Holding Corporation ("Sears")[1] is a Delaware corporation with its headquarters in Hoffman Estates, Illinois.  At all times relevant hereto, Sears was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District.   Sears resides in and engages in a continuous course of business in this District, and based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this class action pursuant to 28 U.S.C. §1332(d)(2).  The claims of the Class members in this class action are in excess of

---

[1] Samsung, Lowe's, The Home Depot, Best Buy, and Sears are referred to collectively herein as "Defendants."

$5,000,000 in the aggregate, exclusive of interest and costs, and the total number of members of the proposed Class is believed to be greater than 100.

15.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, Higginbotham resides in this District, and the Defendants are subject to jurisdiction here and regularly conduct business in this District.

## FACTUAL ALLEGATIONS

16.    In August 2016, Plaintiff Higginbotham purchased one of Samsung's Recalled Washing Machines from a Best Buy store in Norman, Oklahoma.

17.    On November 4, 2016, Samsung announced a "recall involve[ing] 34 models of Samsung top-load washing machines.  The Recalled Washing Machines have mid-controls or rear-controls. The model numbers and serial information can be found on two labels affixed to the back of the machine."  https://www.cpsc.gov/recalls/2017/samsung-recalls-top-load-washing-machines. The Recalled Washing Machines are detailed by model number on Exhibit 2 hereto.  The stated reason for the recall is that "[t]he [Samsung] washing machine top can unexpectedly detach from the washing machine chassis during use, posing a risk of injury from impact."   The recall bulletin further notes that "Samsung has received 733 reports of washing machines experiencing excessive vibration or the top detaching from the washing machine chassis.  There are nine related reports of injuries, including a broken jaw, injured shoulder, and other impact or fall-related injuries."  See, *id*.

18.     At the time of purchase, Higginbotham's Samsung washing machine was new, in excellent condition and without any perceivable damage or defect.  Moreover, Higginbotham has used this Samsung washing machine solely for its intended purpose as a personal home appliance.   Higginbotham had operated her Samsung washing machine with minimal problems or malfunctions prior to the recall, but shortly after her purchase, she became aware that Samsung's washing machines were malfunctioning. On October 4, 2016, she sought help from the Best Buy store from whom she had purchased the washing machine. Best Buy provided her with a statement explaining that the Samsung washing machines were potentially defective, that Samsung was in discussions with the Consumer Product Safety Commission about this problem, and that she should contact Samsung. Higginbotham was shocked to learn from this exchange that Best Buy had sold her a product knowing that it was potentially defective.

19.     Per Best Buy's recommendation, Higginbotham contacted Samsung to have her two (2) month old washing machine replaced. After multiple phone calls and countless hours, Samsung refused to replace her washing machine or provide her with a full refund, despite the fact that her washing machine was still covered by Samsung's one year warranty.

20.     Samsung's recall allows owners of Recalled Washing Machines the option of any one of the following: (i) an in-home repair that includes reinforcement of the washer's top and a free one-year extension of the manufacturer's warranty; (ii) a rebate to be applied towards the purchase of a new Samsung or other brand washing machine, along with free installation of the new unit and removal of old unit; or (iii) a full refund for

consumers who purchased their washing machine within the past 30 days of the recall announcement. See, *id*. This recall failed to provide Higginbotham with adequate relief.

21.    The retrofit that Samsung offers in the recall simply reinforces the top of the washing machine, but still does not allow consumers to use their washing machines on heavy cycles that would be used for items like bedding and heavy garments. However, under the terms of Samsung's agreement with the Consumer Products Safety Commission, Samsung is required to fully refund or replace the washing machine if they cannot successfully repair the machine. *See*, http://www.click2houston.com/consumer/feds-say-samsung-not-following-consumer-product-safety-commission-agreement.      Upon information and belief, Samsung is deliberately making it as difficult as possible for individuals to have their Recalled Washing Machines repaired in order to avoid having to make a full replacement.

22.    The rebates that Samsung offers to consumers under the recall often cover only a fraction of the cost that consumers actually paid for their washing machines. Customers must still pay the difference between the rebate and the price of a new washer on top of what they paid for their Recalled Washing Machines. After multiple frustrating interactions with Samsung, it became apparent that it would be difficult, if not impossible, to get Samsung to provide Higginbotham with relief in the form of a rebate or repair that would allow her to use her washing machine as it was intended to be used.

23.    After learning of Samsung's recall of the Recalled Washing Machines, Higginbotham was not able to use her Samsung washing machine as intended because of the danger posed from potentially having her washing machine "explode" during normal

use.  In addition to being without a working washing machine since August 2016, Higginbotham has spent countless hours on the phone with Samsung attempting to have her defective washing machine repaired or replaced.

## THE RECALLED WASHING MACHINES

24.    The Recalled Washing Machines at issue in this action all have high-speed "direct-drive" mechanisms that spin the washer tub at speeds of approximately 1100 revolutions per minute.  The framing and dampening system of the Recalled Washing Machines is inadequate to withstand the force generated by each such machine's direct drive system.

25. The models of Samsung's Recalled Washing Machines include the following:

| | | |
|---|---|---|
| WA40J3000AW/A2 | WA45H7000AP/A2 | WA45H7000AW/A2 |
| WA45H7200AW/A2 | WA45K7600AW/A2 | WA45K7100AW/A2 |
| WA48H7400AW/A2 | WA48J7700AW/A2 | WA48J7770AP/A2 |
| WA48J7770AW/A2 | WA50K8600AV/A2 | WA50K8600AW/A2 |
| WA52J8700AP/A2 | WA52J8700AW/A2 | WA400PJHDWR/AA |
| WA422PRHDWR/AA | WA456DRHDSU/AA | WA456DRHDWR/AA |
| WA476DSHASU/A1 | WA476DSHAWR/A1 | WA484DSHASU/A1 |
| WA484DSHAWR/A1 | WA48H7400AP/A2 | WA50F9A6DSW/A2 |
| WA50F9A7DSP/A2 | WA50F9A7DSW/A2 | WA50F9A8DSP/A2 |
| WA50F9A8DSW/A2 | WA52J8060AW/A2 | WA5451ANW/XAA |
| WA5471ABP/XAA | WA5471ABW/XAA | WA56H9000AP/A2 |
| WA56H9000AW/A2 | | |

26.    The Recalled Washing Machines at issue here range in price from approximately $450.00 to $1500.00 and come with an express one-year manufacturer's warranty.

27.    As explained above, this case involves Recalled Washing Machines that, in many instances, "explode."  When the Recalled Washing Machines explode, they do so

with such force that the machines are irreparably damaged. Indeed, the force of the explosion is capable of seriously injuring people and damaging property, rendering the Recalled Washing Machines unsafe for ordinary use. Because of the inherent safety risk, the recall now includes a "Home Label Kit" or stickers that state that "consumers should only use the delicate or waterproof cycles when washing bedding, water-resistant and bulky items. The lower spin speed in the delicate or waterproof cycles lessens the risk of the washing machine top unexpectedly detaching from the washing machine chassis." See, https://www.cpsc.gov/recalls/2017/samsung-recalls-top-load-washing-machines. Even if a consumer is able to have Samsung "repair" their defective washing machine, they are still unable to use it for its intended purpose. Samsung advises consumers not to use the washing machines on heavy settings that would typically be used to wash bedding or heavier garments. In essence, Samsung has left consumers with the choice of using a defective product for the life of the product (regardless of whether the recall's reinforcement measures are applied or not), accepting a rebate that is often well below the amount it costs to actually replace a defective machine, or simply doing without.

28.    The defects in the Recalled Washing Machines are latent defects respecting the design of the machines and/or the manufacturing process related to the Recalled Washing Machines and such defects would not reasonably be discoverable by consumers when purchasing any of the Recalled Washing Machines. These latent defects relate principally to the Recalled Washing Machines having structural and design defects in their framing and dampening systems which can cause the tubs to loosen and become projectiles over time. Such defects in the Recalled Washing Machines only manifest only after the

point of sale and such manifestation often occurs outside of Samsung's express warranty period of one year.

29.    In selling the Recalled Washing Machines, Samsung provided a uniform, express one-year factory warranty against manufacturing defects in materials and workmanship.  This express warranty further protects against defects in the tub for three years, as well as defects in the direct drive system for 10 years.  The warranty for the Recalled Washing Machines is offered on a take-it-or-leave-it basis, and consumers are not afforded an opportunity to negotiate for more favorable terms in the warranty because of the parties' relative bargaining power. In addition to the express warranty described above, Samsung marketed, advertised, and warranted that the Recalled Washing Machines were of merchantable quality and fit for their intended purpose.  Samsung further marketed, advertised, and warranted that the Recalled Washing Machines were free from defects and the Recalled Washing Machines did not pose an unreasonable risk to persons or property.

30.    Samsung knew that the Recalled Washing Machines were prone to explosion and, therefore, that the Recalled Washing Machines were inherently defective, unmerchantable and unfit for their intended use.  Beginning as early as 2011, Samsung received high numbers of consumer complaints related to the Recalled Washing Machines for problems with their spin cycles, high vibrations, breaking springs, and even explosions related to the Recalled Washing Machines' spin cycles.  Moreover,  Samsung has known that the exploding Washing Machines cause actual physical injury to consumers since no later than approximately October 24, 2013, when a woman in California was physically

injured by a Samsung Washing Machine explosion. This incident lead Samsung to inspect her washing machine on November 22, 2013.

## CLASS ALLEGATIONS

31. Higginbotham brings this suit as a class action on behalf of herself and on behalf of others similarly situated pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3) (the "Class").  The proposed Class consists of:

> All residents of the United States and its territories or possessions who purchased a new Recalled Washing Machine or otherwise acquired a Recalled Washing Machine from March 2011 to November 2016, primarily for household use and not for resale.

32. Higginbotham also bring this suit as a class action on behalf of the following subclass ("Oklahoma Subclass"):

> All residents of the State of Oklahoma who purchased a new Recalled Washing Machine or otherwise acquired a Recalled Washing Machine from March 2011 to November 2016, primarily for household use and not for resale.

33. Unless otherwise indicated, the Class and the Oklahoma Subclass are referred to herein jointly as the "Class."

34. The members of the Class are so numerous that joinder is impracticable. Samsung is one of the largest manufacturers of residential washing machines in the world and it sells many thousands of residential washing machines annually in the United States and in the State of Oklahoma through retailers such as Lowe's, The Home Depot, Best Buy and Sears.

35. Higginbotham's claims are typical of the claims of the entire Class because Higginbotham purchased a new Recalled Washing Machine, which Higginbotham purchased in August 2016 from a Best Buy store in Norman, Oklahoma.

36. Higginbotham will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Higginbotham has no interests antagonistic to those of other Class members. Higginbotham is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent them.

37. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class, including, but not limited to:

a.    whether the Recalled Washing Machines pose unreasonable safety risks to consumers;

b.    whether Defendants knew, or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c.    whether Defendants concealed the safety risks the Recalled Washing Machines pose to consumers;

d.    whether the safety risks the Recalled Washing Machines pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a washing machine;

e.    whether the Recalled Washing Machines possess material defects;

f.    whether Defendants knew or should have known of the inherent defects in the Recalled Washing Machines when it placed them into the stream of commerce;

g.    whether Derfendants concealed the defects from consumers;

-14-

h.      whether the existence of the defects are material facts reasonable purchasers would have considered in deciding whether to purchase a washing machine;

i.      whether the Recalled Washing Machines are merchantable;

j.      whether the Recalled Washing Machines are fit for their intended use;

k.      whether Defendants were unjustly enriched by the sale of defective Recalled Washing  Machines to the Plaintiff class;

l.      whether any false warranties, misrepresentations, and material omissions by Samsung concerning its defective Recalled Washing Machines caused Class Members' injuries; and

m.      whether Defendants should be enjoined from further sales of the Recalled Washing Machines.

38. Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Higginbotham knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

39. Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.

## FIRST CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## AGAINST ALL DEFENDANTS

40.    Higginbotham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

41.    The Recalled Washing Machines owned by Higginbotham and Class Members were defectively designed and manufactured and pose serious and immediate safety risks to consumers and the public.

42.    These defects were present in such machines at the point of sale of the Recalled Washing Machines.

43.    Such defects place consumers and the public at serious risk for their own safety when the Recalled Washing Machines are used in consumers' homes.

44.    At all times relevant hereto, Samsung, Lowe's, The Home Depot, Best Buy, and Sears were under a duty imposed by law requiring that a manufacturer's and merchant's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is part of the basis for the bargain between Samsung, Lowe's, The Home Depot, Best Buy and Sears, on the one hand, and Higginbotham and Class Members, on the other.

45.    Notwithstanding the aforementioned duty, at the time of delivery, Defendants breached the implied warranty of merchantability in that the Recalled Washing Machines were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used

(safely washing clothes in a residential setting), and failed to conform to the standard performance of like products used in the trade.

46.    Defendants knew or should have known that the Recalled Washing Machines pose a safety risk and are defective and knew or should have known that selling the Recalled Washing Machines to Higginbotham and Class Members constituted a breach of the implied warranty of merchantability.

47.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Higginbotham and Class Members bought the Recalled Washing Machines without knowledge of their defects or their serious safety risks.

48.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Higginbotham and Class Members purchased unsafe products which could not be used for their intended purpose including washing bedding, water-resistant items, and bulky items in a residential setting.

49.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Higginbotham and Class Members have suffered damages and did not receive the benefit of their bargain.

50.    Defendants were unjustly enriched by keeping the profits for the unsafe products while never having to incur the cost of repair, replacement, retrofit, or a recall.

51.    The defectively designed Recalled Washing Machines purchased by Higginbotham and all other Class Members are unfit for their intended and ordinary purposes because they are prone to break and even explode when operated as instructed and intended by Defendants.

52.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Higginbotham and all the Class Members have suffered loss.

## SECOND CAUSE OF ACTION
### STRICT LIABILITY AGAINST
### SAMSUNG

53.     Higginbotham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

54.     Samsung is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling home appliances, and did design, manufacture, distribute, advertise, market, promote and/or sell the Recalled Washing Machines at issue herein.

55.     Samsung's Washing Machines were expected to and did reach Higginbotham and Class Members without substantial change in the condition in which they were manufactured, sold and distributed.

56.     The Recalled Washing Machines were in a defective and unreasonably dangerous condition when they left Samsung's possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended.

57.     Higginbotham and Class Members used the subject Washing Machines in a manner reasonably intended by Samsung.

58.     The Recalled Washing Machines were defective because they were not safe for ordinary and intended use; Samsung failed to provide Higginbotham and Class Members either directly or indirectly, with adequate and sufficient warning regarding the

known or foreseeable risks and dangers inherent in the Recalled Washing Machines; the Recalled Washing Machines contained material design, materials, and manufacturing defects and were not reasonably safe due to such defects; the design, methods of manufacture, and testing of the Recalled Washing Machines did not conform to generally recognized and prevailing standards or the state of the art in existence at the time the design was made and the Recalled Washing Machines were manufactured; and at the time the Recalled Washing Machines left Samsung's control, the foreseeable risks associated with the Recalled Washing Machines' design exceeded the benefits associated with that design.

59.    Higginbotham and Class Members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the defective condition.

60.    Samsung acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers, by manufacturing and selling the Recalled Washing Machines known to them to be defective and unreasonably dangerous. As alleged, Samsung knew or should have known that the Defects would cause their washing machines to fail, flood, damage the Recalled Washing Machine and other property, and threaten the personal safety of consumers. Samsung knew or was repeatedly informed of the serious defects in the Recalled Washing Machines, yet failed to take any remedial action and instead continued to sell this defective product. Given Samsung's conscious disregard for the safety of the public, Higginbotham and Class Members seek exemplary or punitive damages.

## THIRD CAUSE OF ACTION
### NEGLIGENCE AGAINST SAMSUNG

61. Higginbotham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

62. Samsung owed a duty to Higginbotham and Class Members to design, manufacture, produce, test, inspect, market, distribute, and sell the Recalled Washing Machines with reasonable care and in a workmanlike fashion, and had a duty to protect Higginbotham and Class Members from foreseeable and unreasonable risk of harm. Samsung breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the Recalled Washing Machines.

63. Samsung unreasonably failed to provide appropriate and adequate warnings and instructions about its defective Washing Machines, and this failure was a proximate cause of the harm for which damages are sought. In addition, at the time the Recalled Washing Machines left its control, Samsung knew, or in the exercise of reasonable care should have known, its defective Washing Machines posed a substantial risk of harm to the life and property of its customers. Samsung knew, or in the exercise of reasonable care should have known, the Recalled Washing Machines it designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, created an unreasonable safety risk and would fail to perform as intended.

64. Samsung acted unreasonably in designing the Recalled Washing Machines, and this conduct was a proximate cause of the harm for which damages are sought. Further, at the time the Recalled Washing Machines left the control of Samsung, it unreasonably

failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Washing Machines.  Furthermore, at the time the Recalled Washing Machines left the control of Samsung, their design was so defective that a reasonable person, aware of the relevant facts, would not use or purchase a Washing Machine of this design.

65.    Samsung knew, or in the exercise of reasonable care should have known, that the Recalled Washing Machines created unreasonable safety risks.  Samsung further knew, or in the exercise of reasonable care should have known, that the Recalled Washing Machines could cause property damage, personal injury, and/or death.

66.    Based on this knowledge, Samsung had a duty to disclose to the Higginbotham and Class Members the serious safety risks posed by the Recalled Washing Machines and a duty to disclose the defective nature of the Recalled Washing Machines.

67.    Samsung had a further duty not to put the defective Washing Machines on the market and has a continuing duty to replace its unsafe Washing Machines, remove its unsafe Washing Machines from the market and seek a recall from consumers.

68.    Samsung failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Recalled Washing Machines by, among other things, failing to design and manufacture the Recalled Washing Machines in a manner to ensure that, under normal intended usage, they would not pose unreasonable risk to life and property.

69.    Samsung failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, Higginbotham and Class Members of the Defects in the Recalled Washing Machines.

70.    Samsung failed to exercise reasonable care when it knew of the safety risks the Washing Machines posed and actively concealed those risks from Higginbotham and Class Members.

71.    Samsung failed to exercise reasonable care when it knew of the safety risks the Recalled Washing Machines posed and failed to replace, repair or recall Washing Machines it knew were unsafe and defective.

72.    As a direct and proximate result of Samsung's negligence, Higginbotham and Class Members bought the Recalled Washing Machines without knowledge of their defective nature or of their serious safety risks.

73.    As a direct and proximate result of Samsung's negligence, Higginbotham and Class Members purchased unsafe products which could not be used for their intended use.

74.    As a direct and proximate result of Samsung's negligence, Higginbotham and Class Members have suffered damages.

75.    Higginbotham and Class Members seek to recover the damage caused by Samsung.    In addition, given Samsung's conscious disregard for the safety of Higginbotham and Class Members, they also seek an award of exemplary damages.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
## AGAINST SAMSUNG

76.    Higginbotham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

77.    Samsung is and was at all times relevant a merchant with respect to washing machines.

78.    As set forth above, Samsung had knowledge of the defects alleged herein and that they pose serious safety risks to consumers like Higginbotham and Class Members.

79.    Despite that knowledge, at all times relevant, Samsung expressly warranted in writing that its Washing Machines were "warranted by SAMSUNG against manufacturing defects in materials and workmanship."

80.    In its warranty to customers, Samsung also warrants in writing that it provides the following warranties: one year parts and labor; two years control board parts; three years stainless steel tub part; and ten years motor components.

81.    The Recalled Washing Machines have inadequate framing and dampening systems to withstand the extreme forces generated by the direct drive system that powers the machines' drums, often allowing the Recalled Washing Machines to fail by having the tub become disassembled from the frame during a machine's "explosion."  Moreover, the unbalanced load warning is defective in that it fails to stop the Recalled Washing Machines' spin cycle before the machines explode.

82.    Alternatively, the limitations in Samsung's warranty are unconscionable as described herein.

83.    By selling Recalled Washing Machines containing these defects to consumers like Higginbotham and Class Members after it gained knowledge of the defects, Samsung breached its express warranty to provide washing machines that were free from defects.

84.    Samsung also breached its express warranty to repair and correct material defects or component malfunctions in its Recalled Washing Machines when it failed to do so despite knowledge of the known defects and despite knowledge of alternative designs, alternative materials, and options for retrofits.

85.    The limited warranty of repair for the Recalled Washing Machines fails in its essential purpose because the contractual remedy is insufficient to make Higginbotham and Class Members whole and because Samsung has refused to provide the promised remedies within a reasonable time.

86.    Also, as alleged in more detail herein, at the time Samsung warranted and sold the Recalled Washing Machines, it knew that the Recalled Washing Machines did not conform to the warranties and were inherently defective, and Samsung wrongfully and fraudulently misrepresented and concealed material facts regarding its Washing Machines.

87.    Accordingly, Higginbotham and Class Members are not limited to the limited warranty of "repair" and Higginbotham and Class Members seek all remedies allowed by law.

88.    As more fully detailed above, Samsung knew that Higginbotham's washing machine was susceptible to malfunction but failed to provide defect-free washing machines

to Higginbotham or Class Members or to timely provide an adequate retrofit to remedy the Recalled Washing Machines.

89.    As more fully detailed above, Samsung was provided with notice and has been on notice of the defects and of its breach of express written warranties through its own internal and external testing as well as hundreds or thousands of consumer warranty claims reporting malfunctions in the Recalled Washing Machines, and customer complaints, yet it failed to repair, replace, or retrofit the Recalled Washing Machines to ensure they were free of materials defects or component malfunctions as Samsung promised.

90.    As a direct and proximate result of Samsung's breach of its express warranty, Higginbotham and Class Members have suffered damages.

91.    Samsung has been unjustly enriched by keeping the profits from the sale of its unsafe washing machines while never having to incur the cost of repair.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF MAGNUSON-MOSS ACT
### (15 U.S.C. §§ 2301-2312)–WRITTEN WARRANTY
### AGAINST SAMSUNG

92.    Higginbotham hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

93.    The Recalled Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

94.    Higginbotham and Class Members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

95.    Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

96.    Samsung provided Higginbotham and Class members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6).

97.    In its capacity as warrantor, and by the conduct described herein, any attempts by Samsung to limit the express warranties in a manner that would exclude coverage of the Recalled Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Recalled Washing Machines is null and void.

98.    All jurisdictional prerequisites have been satisfied.

99.    By Samsung's conduct as described herein, including Samsung's knowledge of the defective Washing Machines and their action, and inaction, in the face of that knowledge, Samsung has failed to comply with its obligations under its written and implied promises, warranties, and representations.

100.    As a result of Samsung's breach of express warranties, Higginbotham and Class Members are entitled to revoke their acceptance of the Recalled Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## SIXTH CAUSE OF ACTION
### VIOLATIONS OF MAGNUSON-MOSS ACT
### (15 U.S.C. § § 2301-2312)—IMPLIED WARRANTY AGAINST
### ALL DEFENDANTS

101.    Higginbotham hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

102.    Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

103.    Higginbotham and Class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

104.    Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

105.    Lowe's, The Home Depot, Best Buy, and Sears are "warrantors" as that term is defined by 15 U.S.C. § 2301(5).

106.    Defendants provided Higginbotham and Class Members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

107.    In their capacity as warrantors and by the conduct described herein, any attempt by Defendants to limit the implied warranties in a manner that would exclude coverage of the Recalled Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Recalled Washing Machines is void.

108.    All jurisdictional prerequisites have been satisfied herein.

109.    By Defendants' conduct as described herein, including Defendants' knowledge of the defects contained within the Recalled Washing Machines and their action, and inaction, in the face of that knowledge, Defendants have failed to comply with its obligations under their written and implied promises, warranties, and representations.

110.    As a result of Defendants' breach of implied warranties, Higginbotham and Class members are entitled to revoke their acceptance of the Recalled Washing Machines,

obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## SEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT AGAINST
## ALL DEFENDANTS

111.   Higginbotham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

112.   Defendants received proceeds from their sale of the defective Recalled Washing Machines, which were purchased by Higginbotham and Class Members for an amount far greater than the reasonable value of such machines because of such machines' defective character.

113.   In exchange for the purchase price paid by Higginbotham and Class Members, Defendants provided the defective Recalled Washing Machines that are likely to fail within their useful lives and pose a material risk of "exploding." There is no reasonable or acceptable rate for washing machines to explode. Such defects render the Recalled Washing Machines unfit, and indeed, unsafe for their intended use.

114.   Higginbotham and Class Members reasonably believed that the Recalled Washing Machines would function as advertised and warranted, and did not know, nor could have known, that the Recalled Washing Machines contained latent defects at the time of purchase.

115.   Defendants know of and appreciate the benefit conferred by Higginbotham and Class Members and has retained that benefit notwithstanding its knowledge that the benefit is unjust.

116.    Under the circumstances, permitting Defendants to retain the proceeds and profits from the sales of the defective Washing Machines described herein would be unjust. Hence, Defendants should be required to disgorge this unjust enrichment.

### EIGHTH CAUSE OF ACTION
### VIOLATION OF STATE CONSUMER PROTECTION LAWS
### AGAINST ALL DEFENDANTS

117.    Higginbotham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

118.    Defendants' deceptive trade practices in, *inter alia*, misrepresenting the quality and character of the Recalled Washing Machines violate the following state consumer statutes:

    a.    The Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (5), (7), and (27), et seq.;

    b.    The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471-45.50.561;

    c.    The Arizona Consumer Fraud Act, A.R.S. § 44-1522;
    d.    The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), et seq.;

    e.    The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq., and the California Unfair Competition Law, Cal. Bus. and Prof. Code, § 17200, et seq.;

    f.    The Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), et seq.;

    g.    The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), et seq.;

    h.    The Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, et seq.;

i.     The District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), et seq.;

j.     The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), et seq.;

k.     The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (3), (5), and (7), et seq.;

l.     The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), et seq., and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), et seq.;

m.     The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), et seq., and Idaho Code § 48-603C, et seq.;

n.     The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, et seq., and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. §§ 510/2(a)(5), (7) and (12), et seq.;

o.     The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), et seq.;

p.     The Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, et seq.;

q.     The Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), et seq.;

r.     The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.170(1) and (2), et seq.;

s.     The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), et seq.;

t.     The Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), et seq.;

u.     The Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E) and (G), et seq., and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, et seq.;

v.     The Maryland Consumer Protection Act, Md. Code Commercial Law, §§ 13-301(1) and (2)(i)-(ii), and (iv), (5)(i), and (9)(i), et seq.;

w. The Michigan Consumer Protection Act, M.C.P.L.A. §§ 445.903(1)(c)(e), (s) and (cc), et seq.;

x. The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), et seq., and the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat. § 8.31, subd. 3(a);

y. The Mississippi Consumer Protect Act, Miss. Code Ann. §§ 75-24-5(1), (2)(b), (c), (e), and (g), et seq.;

z. The Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), et seq.;

aa. The Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-103, et seq.;

bb. The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 591602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), et seq.;

cc. The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0915(5) and (7), et seq.;

dd. The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), et seq.;

ee. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, et seq.;

ff. The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7) and (14) and 57-12-3, et seq.;

gg. The New York Business Law, N.Y. Gen. Bus. Law § 349(a);

hh. The North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), et seq.;

ii. The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, et seq.;

jj. The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.02(A) and (B)(1) and (2), et seq.;

kk. The Oklahoma Consumer Protection Act, 15 O.S. §§ 753(5), (7) and (20), et seq.;

ll.    The Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§ 646.608(1)(e)(g) and (u), et seq.;

mm. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, et seq.;

nn.    The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), et seq.;

oo. The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), et seq.;

pp. The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), et seq.;

qq. The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a), (b)(2), (3), (5), and (7), et seq.;

rr. The Texas Deceptive Trade Practices Consumer Protection Act, V.T.C.A., Bus. & C. §§ 17.46(a), (b)(5) and (7), et seq.;

ss. The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1), (2)(a), (b), and (i) et seq.;

tt. The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), et seq.;

uu. The Virgin Islands Consumer Protection Law, V.I. Code Ann. tit. 12A, § 101, et seq.;

vv. The Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200(A)(5)(6) and (14), et seq.;

ww. The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, et seq.;
xx. The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, et seq.; and

yy. The Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§ 40-12-105(a), (i), (iii) and (xv), et seq.

119.    By this Cause of Action, Higginbotham plead on behalf of the Class violations of all the foregoing consumer and deceptive trade practice laws.

## NINTH CAUSE OF ACTION
## FRAUD AGAINST SAMSUNG

120.    Higginbotham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

121.    Upon discovering that her Samsung washing machine was subject to recall, Higginbotham quickly contacted Samsung to repair or replace the washing machine. Samsung represented in their recall notice that they would repair any Recalled Washing Machine free of charge to the consumers, including Higginbotham.

122.    The truth is that Samsung cannot repair these washing machines. They can perform a retrofit that will reinforce the washing machines, but it will not allow consumers to use these washing machines for the purposes for which they were advertised and purchased. In addition, as part of their agreement with the Consumer Protection Safety Commission, any washing machine that cannot be repaired must be replaced by Samsung at no cost to the consumer. As a result, Samsung is doing everything in its power to keep consumers from accepting the repair option, including scheduling repairs and then having them cancelled, failing to return phone calls for those who wish to schedule repairs, and other stalling tactics, in order to force consumers to accept the rebate option, thereby freeing Samsung from the obligation to replace the washing machines once it becomes apparent that the repair does not fully fix the problem.

123.    Upon information and belief, Samsung had no intention of keeping their representation that they would repair Higginbotham's defective washing machine, as it is in Samsung's financial interest to force Higginbotham and other members of the class to use Samsung's proffered rebate to purchase a new Samsung washing machine, or using Samsung's proffered rebate of a lesser amount to purchase another brand of washing machine as the cost of the rebate is, on information and belief, less expensive than the cost of repair to the Recalled Washing Machines. In addition, Samsung is unable to repair the Recalled Washing Machines. Even after the retrofit is done and the top of each washing machine is reinforced, consumers are still unable to use their washing machines as intended. As a result, Samsung would owe every consumer who has their Recalled Washing Machine repaired a full refund or a new washing machine immediately after the repair has been completed. *See* http://www.click2houston.com/consumer/feds-say-samsung-not-following-consumer-product-safety-commission-agreement.

124.    At the time Samsung made the representation that they would repair their Recalled Washing Machines, they were fully aware of the cost savings they would receive by "encouraging" owners of the Recalled Washing Machines, including Higginbotham, to take the proffered rebate rather than having their existing washing machine repaired. As a result, Samsung intentionally made it difficult, if not impossible, for Higginbotham and other members of the Class to obtain retrofits for their Samsung washing machines, all in the hope consumers would choose to accept the rebate option instead of a retrofit.

125.    As a result of Samsung's fraud, Higginbotham and the class are entitled to full compensation for the loss of their Recalled Washing Machines including time lost in

seeking to have the Recalled Washing Machines repaired and time and money spent finding other means to wash their belongings while they waited for Samsung to repair their Recalled Washing Machines.

## TENTH CAUSE OF ACTION
### DECEIT AGAINST ALL DEFENDANTS

126.    Higginbotham re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

127.    After discovering that the Recalled Washing Machines were unfit for sale to, or use by, the public, Defendants continued to suggest and/or assert that the Recalled Washing Machines were fit for use by consumers. In addition, Defendants attempted to suppress the fact that the Recalled Washing Machines were not fit to be used as advertised so that consumers would continue to purchase the Recalled Washing Machines and Defendants could reap the rewards.

128.    In addition, upon information and belief, through their advertisements and sales tactics, Defendants promised consumers that Recalled Washing Machines were suitable for residential use when in fact they were not.

129.    Following the recall, Samsung promised consumers that they would retrofit or repair the Recalled Washing Machines, thereby allowing the Recalled Washing Machines to be used for the purposes for which they were marketed, when in fact, Samsung could not repair the Recalled Washing Machines to these standards and therefore was intentionally promising consumers an act or result which they had no intention of performing.

130.    As a result of Defendants' deceit, Higginbotham and the class are entitled to full compensation for the loss of their Recalled Washing Machines, including time lost in seeking to have the Recalled Washing Machines repaired and time and money spent finding other means to wash their belongings while they were without their Recalled Washing Machines.

**WHEREFORE,** Higginbotham individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.    An Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    An Order appointing Higginbotham as representative for the Class and appointing her counsel as lead counsel for the Class;

C.    An order awarding Higginbotham and all other Class Members damages in an amount to be determined at trial for the wrongful acts of Samsung described herein;

D.    An Order enjoining Samsung, Lows, The Home Depot, Best Buy, and Sears, their agents, successors, employees, and other representatives from engaging in or continuing to engage in the manufacture (in the case of Samsung), marketing, and sale of the defective Recalled Washing Machines; requiring Samsung, Lows, The Home Depot, Best Buy and Sears to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Recalled Washing Machines; and requiring Samsung, Lowes, The Home Depot, Best Buy, and Sears to preserve all evidence relevant to this lawsuit and notify Recalled Washing Machine owners with whom it comes in contact of the pendency of this and related litigation;

E.      Restitution as authorized by law;

F.      Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

G.      An assessment of punitive damages, consistent with the actual harm Samsung has caused and the reprehensibility of its wanton and willful conduct, and the need to punish and deter such conduct;

H.      An order awarding attorney's fees pursuant to applicable Federal and State law;

I.      Interest as provided by law, including but not limited to pre judgment and post-judgment interest as provided by rule or statute; and

J.      Any and all other and further relief as this Court deems just, equitable, or proper.

DATED:  February 1, 2017           /s/ *William B. Federman*
                                   **FEDERMAN & SHERWOOD**
                                   William B. Federman (Bar No. 2853)
                                   10205 North Pennsylvania
                                   Oklahoma City, Oklahoma 73120
                                   Telephone: (405) 235-1560
                                   Facsimile:  (405) 239-2112
                                   wbf@federmanlaw.com

                                   *Attorneys for Plaintiff*